Destiny CRUMP, Plaintiff,

v.

WAL–MART GROUP HEALTH
PLAN, Defendant.

Civil Action No. C95–711–L(H).

United States District Court,
W.D. Kentucky,
Louisville Division.

April 26, 1996.

Rodney D. Burress, Shepherdsville, Kentucky, for plaintiff.

Douglas L. McSwain, Scott White, Sturgill, Turner & Truitt, Lexington, Kentucky, for defendant.

## MEMORANDUM OPINION

HEYBURN, District Judge.

The Court now considers Plaintiff's Motion to Remand to state court. The case raises unusual questions about the proper time for removal when a plaintiff's cross-claim interjects federal issues into a state case and when, in mid-litigation, the state court realigns parties to create diversity of citizenship. After due reflection, the Court concludes that it may retain this case pursuant to 28 U.S.C. §§ 1441(a) and (b) under its diversity and federal question jurisdictions.

### I.

This case comes to the Court with a complex procedural history. On September 29, 1993, Crump was involved in an automobile accident; her car was hit head-on by another driven by David Young, Jr. At the time of the accident, Crump's father was an employee of Wal–Mart and was a participant in the Wal–Mart Associates Health Plan. Crump was a participant and beneficiary of this plan. Wal–Mart, at the time of this case's removal, had paid approximately $250,434 of $315,563 on Crump's behalf for medical expenses incurred.

On October 20, 1993, Jarriett Paul Moore, a passenger in Crump's vehicle, filed suit in Bullitt Circuit Court to recover damages he sustained from the accident. Moore named a number of individuals and entities as defendants, including Crump. Wal–Mart was not a party to this suit. Crump was called upon to assert any claims she had because of the losses she sustained in the accident.

On April 6, 1994, Crump filed her Verified Complaint and asserted a cross-claim against Young, among others. She asserted a claim of negligence and gross negligence meriting compensatory and punitive damages. She also asserted a cross-claim against State Farm Insurance Company ("State Farm"), based upon a policy owned by her father and her.

On June 3, 1994, pursuant to KRS 411.188 [1], Crump sent notice to Wal–Mart of Moore's civil suit and her cross-claim, so that

---

1. KRS 411.188(2) states, in pertinent part:
   **Notification of parties holding subrogation rights—collateral source payments and subrogation rights admissible.—**
   At the commencement of an action seeking to recover damages, it shall be the duty of the plaintiff . . . to notify. . . . those parties believed by him to hold subrogation rights to any award received by the plaintiff as a result of the action. The notification shall state that failure to assert subrogation rights by intervention, pursuant to Kentucky Civil Rule 24, will result in a loss of those rights with respect to any final award received by plaintiff as a result of the action.

Wal–Mart could assert any subrogation rights it may possess. The notice, pursuant to KRS 411.188, was filed on June 13, 1994.

On September 20, 1994, Wal–Mart filed a Motion for Leave to File an Intervening Complaint in Moore's civil suit against Crump and others, seeking to enforce its subrogation rights against Young. Wal–Mart also sought to recover from various insurance companies who provided coverage to Young and Crump, respectively. The state court granted the motion.

On August 14, 1995, Wal–Mart filed a Motion for Permanent Injunction. It noticed the motion for hearing on August 21, 1995. State Farm allegedly offered to pay its policy limit of $100,000 to Crump. Wal–Mart, believing it was entitled to those funds under its subrogation rights, filed the motion asking the state court to direct State Farm to pay the funds over to Crump's attorney. Her attorney would then hold the funds in trust until Crump and Wal–Mart could agree on distributing the funds. The state court never ruled on the motion.[2] At the time of the motion, no action pended between Wal–Mart and Crump.

On September 12, 1995, Crump moved the state court to allow her to amend her answer and to assert a cross-claim against Wal–Mart. She attached the cross-claim to the motion. She noticed the motion to be heard on September 15, 1995. Her cross-claim asserted various causes of action: alleged tortious interference with her contractual relationship with State Farm; fraudulent misrepresentation of the respective rights of the parties under the provisions of the Group Health Plan as contained in Wal–Mart's Summary Plan Description, a violation of 29 U.S.C. § 1022(a)(1), Employment Retirement Income Security Act (ERISA);

unfair claims settlement practices violating K.R.S. 304.12–010 and –230; and a violation of the duty of good faith in dealing with Crump.

On September 13, 1995, Wal–Mart moved to amend its intervening complaint to assert a claim against Crump. That motion was also noticed to be heard on September 15, 1995. On September 15th the state court passed both motions to a later date. On October 2, the state court granted Crump leave to file her cross-claim and entered that order on October 3, 1995. The cross-claim was, thus, ordered filed on that date. Wal–Mart withdrew its motion without the state court's ruling upon it.

On October 6, 1995, Wal–Mart filed a Motion to Reconsider Joinder (actually a motion to reconsider the Court's allowance of the cross-claim), and, in the alternative, a Motion to Sever Crump's claim from the underlying action. On October 9, 1995, the state court granted the Motion to Sever Crump's cross-claim against Wal–Mart from the underlying tort and subrogation claims. The state court ruled that it would treat the cross-claim as a separate action and realign the parties. It, however, did not assign the severed action a different docket number. The court signed the order on the 13th of October and filed it on the 16th of October.[3]

Prior to that time, on October 10–11, trial proceeded on the underlying claim, and the jury returned a verdict in favor of Crump. The verdict provided for $1.5 million in mental and physical pain and suffering; more than $315,000 for medical expenses; more than $14,000 in lost wages and income; and $2 million in punitive damages. The jury awarded Wal–Mart $250,434 on its subrogation claim.

**2.** Wal–Mart claims that it requested the state court to pass its motion, for it was not ripe. Crump takes issue with Wal–Mart's recollection of the events of August 21. However, this dispute is not material to this Court's analysis. The decision to remand or not to remand does not require the Court to rely on the motion's filing or the state court's failure to rule thereupon.

**3.** The Bullitt Circuit Court specifically ordered:
 1. That the Cross-claim asserted against Wal–Mart Group Health Plan by Destiny

Crump is hereby severed from the remainder of the above-styled civil action and shall be proceeded with separately; and
 2. That for purposes of the action of Destiny Crump against Wal–Mart Group Health Plan that the parties be realigned as Plaintiff and Defendant, and that Wal–Mart Group Health Plan shall have twenty (20) days from October 2, 1995 in which to answer or otherwise respond to said action of Destiny Crump.

On October 23, 1995, Wal–Mart removed the existing case to federal court. In its petition, Wal–Mart specifically stated that it was removing only Crump's cross-claim against it. Wal–Mart claimed that ERISA governs Crump's severed action. Specifically, Wal–Mart claims that §§ 1132 and 1144 of Title 29 preempt Crump's claims and on that basis are removable. Wal–Mart also cited that diversity of citizenship properly gave this court subject matter jurisdiction. At the time of the removal petition the state court had not entered formal judgment on the underlying action. The state court judge said that the judgment's entry would await this Court's resolution of the parties' respective petition for removal and motion to remand.

## II.

■ Before deciding whether Wal–Mart properly removed the action to the federal forum, the Court must first dispense with Crump's argument that Wal–Mart waived its right of removal.

Crump argues an odd form of waiver of the removal rights. She claims that when Wal–Mart intervened in the underlying tort action, it interjected an ERISA claim into that cause of action. She says that Wal–Mart could have asserted its ERISA claim in federal court but chose to proceed in state court. By doing so, she asserts that Wal–Mart waived its right to remove the case to federal court. However, Crump's point ignores that under Kentucky law, Wal–Mart had no choice but to intervene or lose its right of subrogation.[4]

■ Furthermore, Crump mischaracterizes the nature of Wal–Mart's actions in state court. The act of asserting one's subrogation rights is not a cause of action traditionally understood to be an ERISA claim for purposes of subject matter jurisdiction. See 29 U.S.C. § 1132 (setting forth the civil enforcement remedies of ERISA). The act is an assertion of a non-preempted state subrogation claim. No federal subject matter jurisdiction exists solely because an ERISA-au-

thorized plan asserts its subrogation rights in a state tort action. *See Grusznski v. Viking Ins. Co.,* 854 F.Supp. 586 (E.D.Wis.1994). Wal–Mart never sought to assert any claim under the civil enforcement provisions of ERISA. Only upon Crump's submitting her motion to file her cross-claim and the state court's subsequent approval did an ERISA claim and the potential for removal jurisdiction first appear. Moreover, nothing in Wal–Mart's actions exhibited a clear and unequivocal intent to litigate Crump's ERISA-based claims in state court.

## III.

Generally, an action brought in state court may be removed to federal court by a defendant, if the federal court has original jurisdiction over the claim. Crump's claims made pursuant to ERISA provide a valid basis for *federal question* removal, 29 U.S.C. § 1132(e) and 28 U.S.C. §§ 1441(a) and (b).

Title 28 U.S.C. Section 1446 governs the procedures for removing a case to the federal forum. Section (b) states:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

---

4. Since this case was originally filed, the Kentucky Supreme Court ruled that KRS 411.188 is unconstitutional. *O'Bryan v. Hedgespeth,* 892 S.W.2d 571 (1995).

■ Crump first argues that the time clock for removal began running in August of 1995. On August 21st, Wal–Mart had noticed for hearing its Motion for Injunctive relief. Crump claims that Wal–Mart's *referencing* federal law in that specific motion started the statutory 30–day period. However, the Court finds no case or statutory law to support Crump's position. Crump failed to proffer any. The "relation to" principle on which Crump seems to rely is found in ERISA's broad preemptive power. 29 U.S.C. § 1144(a). Typically, it appears as part of a defendant's defense to a claim. It does not function as a sword in a plaintiff's hand to attack a defendant's right to remove.

The underlying tort and subrogation claims were not removable under federal question jurisdiction. Wal–Mart argues that its right to remove accrued only after the state court *granted* Crump's motion to file her cross-claim. Crump alternatively argues that the Wal–Mart should have petitioned for removal within 30 days of her *filing* this same motion.

The Sixth Circuit has not addressed the issue in a published opinion.[5] The majority position is that the time for removal begins to run when the state court hearing the specific case *grants* the motion to amend, *Graphic Scanning Corp. v. Yampol*, 677 F.Supp. 256 (D.De 1988), *aff'd* 850 F.2d 131 (2d Cir.1998); *DeBry v. Transamerica Corp*, 601 F.2d 480 (10th Cir.1979). These cases conclude that without adjudication of the motion, the state court could ultimately deny the motion notwithstanding a prior removal to the federal forum. Thus, the parties would inundate the federal system with cases over which it technically had no jurisdiction. Only after the state court grants the motion can it "be ascertained [by the defendant] that the case is one which is or has become removable." 28 U.S.C. § 1446(b).

A minority of courts focus upon the plain language of the statute, which speaks of the *filing* of the motion to commence the running of the 30–day period. To rule otherwise, they say, would ignore the plain meaning of the statute. *Webster v. Sunnyside Corp.*, 836 F.Supp. 629 (S.D.Iowa 1993); *Jackson v. Brooke*, 626 F.Supp. 1215 (D.Co.1986). Which viewpoint this Court ultimately adopts determines whether it possesses federal question jurisdiction.

In this case, Crump filed a motion seeking permission to assert a cross-claim containing ERISA claims. That cross-claim was not actually filed or made a part of the record until the state court entered its order dated October 2, 1995. Prior to that time neither a federal claim nor a federal case existed to be removed. The distinction may seem a technical one but it is important. A defendant cannot be required to remove a case which does not exist. Conceptually and physically there is nothing to remove.

The issue here is easily confused with the concepts of notice and knowledge, which are so often pivotal in removal cases. Our case is unlike the situation where a defendant has

5. The Sixth Circuit has considered related issues in an unpublished opinion. *Holston v. Carolina Freight Carriers Corp.*, No. 90–1358, 1991 WL 112809 [6th Cir. (Mich)] In *Holston*, the plaintiff had initially filed a wrongful discharge suit in state court; defendant answered. Defendant later amended its answer to assert a defense of preemption. Two months later, defendant deposed plaintiff. After receiving a transcript of the deposition, defendant filed its removal petition citing preemption by § 301 of the Labor Management Relations Act as grounds for removal and its *receipt* of plaintiff's deposition transcript as the "other paper" which triggered the 30–day removal period.

The Sixth Circuit began by looking at the language of the statute itself and found it ambiguous. The court stated that the statute possessed alternative interpretations: the statute could mandate service of the papers themselves to trigger removal, or it could require notice of facts that lead to the possibility of removal. The Court found that the purpose of the statute was to provide the right to removal "once the defendant receives actual notice that the case has become removable." (*Quoting* 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure*, § 3732 at 520). When defendant amended its answer it had the requisite knowledge that the case was removable. And, defendant failed to file timely; thus, losing its right to remove.

Though facially similar to our case, *Holston* actually addresses a completely different concept. *Holston* is a case about unambiguous knowledge of an existing claim arising from the defense asserted in the answer. The facts of the unpublished *Holston* opinion are distinguishable because Wal–Mart's knowledge was ambiguous and uncertain.

unambiguous knowledge of facts from which it can ascertain a removable claim. In that circumstance, defendant's knowledge of a claim is paramount because it creates the right to remove and, thus, commences the thirty (30) day window for removal. Here, only Plaintiff can create the situation where a case may become removable. Defendant cannot. Though Defendant may speculate that Plaintiff intends to assert a removable claim, that speculation has no practical significance until the claim is a reality.

The plain and practical reading of § 1446(b) is not inconsistent with this view. Crump's motion requested permission to assert entirely new claims. Until the state court actually granted the motion, there simply was no case or claim to remove, only speculation about the court's intentions.

### IV.

Wal–Mart cites another basis for removal premised upon diversity jurisdiction, which would authorize the Court to hear Crump's cause of action as well.

■ Diversity of citizenship on the underlying tort and subrogation action did not exist. No one argues to the contrary. However, diversity of citizenship does exist with reference to Crump's civil suit against Wal–Mart.[6] Had the state court not severed her claim from the underlying action and realigned the parties to reflect their true interests, the Court might find · otherwise. The failure of the state court to assign a different civil action number is a difference that makes no difference. For purposes of determining this Court's jurisdiction, the important factor is the state court's severing and realigning the parties. By doing so, it, in essence, found that the claim was a separate civil suit which ultimately triggered the right to remove. As such, if this Court finds it has subject matter jurisdiction and that Wal–Mart followed proper removal procedures, then the case is properly before the Court.

Crump argues diversity jurisdiction exists only because the state court severed her claim against Wal–Mart from the underlying action and realigned the parties to reflect their new status of Plaintiff and Defendant, Crump and Wal–Mart, respectively. Citing *O'Rourke v. Communique Telecommunications, Inc.,* 715 F.Supp. 828 (E.D.Mich.1989), she submits that only her voluntary act of creating diversity, not an action of the state court, can provide this Court with diversity jurisdiction over this case.

The Commentary to § 1446(b) provides an excellent explanation of the "voluntary act" principle. It states,

> The mission of the second paragraph [§ 1446(b) ] is to recognize that the action as originally brought may not be removable, but that it may become so through some event occurring afterwards. One example of this is in a potential diversity of citizenship case in which one of the originally joined defendants, S (for spoiler), has the same citizenship as one of the plaintiffs, precluding removal, but is dropped as a party at a later point through the voluntary act of the plaintiff or a mutual settlement between the plaintiff and S, making the case ripe for removal. The second paragraph of subdivision (b) permits the removal to be made now. It starts a new 30–day period from the time the remaining defendant receives the paper manifesting that S has been dropped.

28 U.S.C. § 1446 (COMMENTARY ON 1988 REVISION OF SECTION 1446, Seigel, David D.). Since Crump neither voluntarily dropped a non-diverse defendant nor settled therewith, she claims that Wal–Mart cannot remove this case.

*O'Rourke* is easily distinguishable because it actually epitomizes the scenario envisioned by the Legislature when passing § 1446(b). The situation presented here, however, does not fit that scenario. First, Crump was not a plaintiff, originally; she was a defendant. Wal–Mart was not a defendant, originally; it was an intervening plaintiff. Their statuses

---

**6.** Crump is a citizen and resident of Kentucky. Wal–Mart Group Health Plan is trust organized and existing under the terms of ERISA. It is a resident of Arkansas where it also has its principal place of business. Additionally, Crump alleges damages in excess of the requisite $50,000 jurisdictional amount.

certainly do not reflect even one iota the type of situation contemplated when the federal judiciary envisioned, created and applied the principle of "voluntary act" to diversity jurisdiction removal cases. Thus, it does not apply in this case.

The Court, though, still must determine (1) whether the petition for removal was timely filed; and (2) if so, whether removal on this basis is beyond the one year limitation prohibiting diversity jurisdiction removal. See 28 U.S.C. § 1446(b).

■ The Court finds that the petition for removal was filed within 30 days of Wal–Mart's ascertaining grounds for removal. The Court returns to the language of the statute itself and the Sixth Circuit's reasoning in *Holston, supra.* Again, both clearly address this issue. Grounds for removal on diversity jurisdiction arose when the state court severed Crump's claim and realigned the parties. Only at that point could the Wal–Mart reasonably and actually ascertain that diversity of citizenship existed between the parties.

■ Since the state court's act of severing Crump's claim created a separate cause of action, then it only logically follows that § 1446(b)'s one-year time limitation for filing diversity jurisdiction removal began with that court's action. Wal–Mart's petition fell within the requisite one year time limitation.

### V.

Had this Court not found jurisdiction to hear Crump's claim and ultimately remanded this case per her request, an unfortunate result would surely have happened. Count II of her claim invokes the civil enforcement procedures of ERISA, 29 U.S.C. §§ 1132(a)(1)(B) and (3). Although not expressly referenced in her claim, she in essence requests the Court to enforce her rights under the plan and ERISA [1132(a)(1)(B) ]. But, she also claims that Wal–Mart's actions violated ERISA itself and the terms of her plan. And, she requests that such actions be enjoined, § 1132(a)(3). While the state courts possess concurrent jurisdiction over the former claim, only the federal courts can hear the latter. 28 U.S.C. § 1132(e). The state court would have had no option but to dismiss her request for injunctive relief, since it would not have possessed the requisite subject matter jurisdiction.

Crump also raises the issue whether Wal–Mart removed the entire case, including the underlying tort and subrogation claims, to this Court. Based upon the reading of Wal–Mart's removal petition, the state court's severing of the ERISA-based claims from the underlying action, and the parties' respective memoranda of law, the Court answers negatively. Had Wal–Mart removed the entire case, the Court would have declined supplemental jurisdiction over the underlying claims and granted jurisdiction solely over Crump's civil suit against Wal–Mart. Although, the following statement may be superfluous, this Court's denial of the motion to remand should leave no doubt that the judgment in the underlying action should be entered and the appropriate relief provided. This Court will hear only those claims contained in the severed action.

Finally, Crump argues that Wal–Mart failed to notice all adverse parties, pursuant to 28 U.S.C. § 1446(d). The Court, however, finds that the only party requiring notice, viz., Crump, received the requisite notice.